**Bradley David QUIST, Petitioner and Appellant,**

v.

**Walter LEAPLEY, Warden of the South Dakota State Penitentiary, Appellee.**

No. 17573.

Supreme Court of South Dakota.

Considered on Briefs Jan. 16, 1992.

Decided June 10, 1992.

ricultural real property.

---

**6.** SDCL 10–6–33.1 to 6–33.4 set forth procedures for assessing, valuing, equalizing and taxing ag-

William Fuller of Woods, Fuller, Shultz & Smith, Sioux Falls, for petitioner and appellant.

Mark Barnett, Atty. Gen., Ann C. Meyer, Asst. Atty. Gen., Pierre, for appellee.

PER CURIAM.

Bradley David Quist (Quist) appeals the denial of his application for habeas corpus relief from his convictions for one count of first degree robbery and one count of second degree burglary. We reverse and remand.

### FACTS

On March 22, 1988, state filed an information charging Quist with one count of first degree robbery and a second information charging him with one count of second degree burglary. The informations were filed in connection with a robbery that occurred at a shopping mall in Aberdeen, South Dakota in January 1988. In addition to the robbery charge, state filed a Part II habitual offender information alleging Quist had three prior felony convictions for robbery in the state of Texas.

Quist was arraigned on the above charges on March 22, 1988 before Circuit Judge Berndt. Judge Berndt fully advised Quist of the elements of the offenses, the maximum penalty on conviction of each and the maximum penalty on conviction as an habitual offender. Judge Berndt also explained Quist's constitutional rights to him including: the right to trial by jury in the county where the offense occurred; the right to counsel; the privilege against self-incrimination; the right to confront adverse witnesses; and the presumption of innocence. Quist was further instructed that a guilty plea would result in a waiver of his constitutional rights. Quist indicated his understanding and also indicated his attorney had explained his rights to him.

Quist then entered not guilty pleas to the underlying charges.

On May 2, 1988, Quist appeared before Circuit Judge Dobberpuhl to change his not guilty pleas to guilty under the terms of a plea bargain involving the dismissal of the habitual offender information. At the outset of the change of plea hearing, the trial court queried:

[Trial Court]: He has been arraigned on these charges as well as being charged with habitual criminal; is that correct . . . ?

[States attorney]: That is correct, Your Honor.

No further advisement of rights or elements of the offenses took place before Quist entered his guilty pleas. Judgments were entered against him for robbery and burglary on May 3, 1988. Quist was sentenced to twelve years in the penitentiary on each offense with the two sentences to run concurrently.

On October 16, 1990, Quist filed an application for a writ of habeas corpus seeking relief from his robbery and burglary convictions. He contended he is being illegally detained on invalid convictions because: there was an insufficient factual basis to support his guilty pleas; the record of his pleas fails to demonstrate he was advised of his constitutional and statutory rights immediately prior to acceptance of the pleas; and, the record fails to demonstrate he made a knowing waiver of his statutory and constitutional rights prior to entry of the pleas. The habeas court entered its final order denying Quist relief on May 17, 1991. A certificate of probable cause concerning the existence of an appealable issue was subsequently granted by the habeas court and this appeal followed.

### ISSUE

WHETHER THE HABEAS COURT ERRED IN DENYING QUIST RELIEF FROM HIS ROBBERY AND BURGLARY CONVICTIONS?

Quist argues the record in this case is insufficient to establish the validity of his guilty pleas. He asserts Judge Dobber-

puhl's failure to readvise him of his constitutional rights immediately prior to entry of his pleas renders the pleas invalid. We agree.

Much argument has taken place before this court in response to its recognition in *Nachtigall v. Erickson,* 85 S.D. 122, 128, 178 N.W.2d 198, 201 (1970) that:

> [I]t is now settled as a principle of the constitutional law that a plea of guilty cannot stand unless the record in some manner indicates a free and intelligent waiver of the three constitutional rights mentioned in [*Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) ]—self-incrimination, confrontation and jury trial—and an understanding of the nature and consequences of the plea.

What is often ignored is the reason for this rule. That is also set forth in *Nachtigall* and stems from the holding of the U.S. Supreme Court in *Boykin* that:

> [I]t is error to accept a guilty plea *without an affirmative showing* that it was intelligent and voluntary. If it is not intelligent and voluntary it has been obtained in violation of due process and is void. *For a guilty plea to be intelligent consideration must be given to the fact that a waiver takes place when it is entered*
>
> .    .    .    .    .
>
> "Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination ... Second, is the right to trial by jury ... Third, is the right to confront one's accusers. We cannot presume a waiver of these three important federal rights from a silent record."

*Nachtigall,* 85 S.D. at 126–27, 178 N.W.2d at 200 (citations omitted) (emphasis added) (*quoting Boykin,* 395 U.S. at 244, 89 S.Ct. at 1712, 23 L.Ed.2d at 274).

This passage makes clear that when a judge taking a plea canvasses a defendant's so called *Boykin* rights prior to accepting a guilty plea, he is in reality utilizing a mechanism to insure the plea is being intelligently entered. He is avoiding a silent record on the intelligence of the plea as condemned in *Nachtigall.* In short, he is creating a foundation from which he can enter a finding that the defendant's guilty plea is being intelligently entered.

The *Boykin* advisements are not the only mechanism by which a plea taking court can insure the intelligent entry of a guilty plea. This court has recognized that, "specific articulation of [the *Boykin* ] rights by the trial judge is not an indispensible requisite for the record to establish a valid plea. It is sufficient when the record *in some manner* shows the defendant entered his plea understandingly and voluntarily." *Logan v. Solem,* 406 N.W.2d 714, 717 (S.D. 1987) (emphasis original). Thus, in *Logan,* we found the defendant's nolo contendere plea valid despite the plea taking judge's failure to readvise him of his privilege against self-incrimination where *the same judge* had canvassed the defendant on the privilege during an initial arraignment. Although unsaid in *Logan,* the plea taking judge had a clear basis on which to find the defendant's plea intelligent because, "[a] court may generally take judicial notice of *its own* records or prior proceedings in the same case ..." *State v. Cody,* 322 N.W.2d 11, 12, n. 2 (S.D.1982) (emphasis added).

However, in *State v. Sutton,* 317 N.W.2d 414 (S.D.1982) we invalidated a guilty plea where the defendant was not readvised of all his constitutional rights by the plea taking judge prior to entry of the plea. State argued that since the defendant was advised of all his rights at the preliminary hearing, his plea was, nevertheless, valid. We disagreed holding the plea taking judge could not assume the lay magistrate had fully advised the defendant of his rights at the preliminary hearing and that, "[t]he trial court must be able to determine *from its own record* that the accused has made a free and intelligent waiver of his constitutional rights before a guilty plea is accepted." *Sutton,* 317 N.W.2d at 416 (emphasis added).

The distinction in the necessity of a readvisement of rights prior to entry of a guilty plea where an earlier advisement was given

by the same judge or by a different judge was further amplified in *Stacey v. State,* 349 N.W.2d 439 (S.D.1984). In *Stacey,* a circuit court judge fully advised the defendant of his rights at a combined arraignment and preliminary hearing. The defendant subsequently changed his not guilty plea to guilty *before the same judge* who failed to fully readvise the defendant of his rights. This court nevertheless held the plea was valid based upon the rule of *Sutton* that, " '[t]he trial court must be able to determine from its own record that the accused has made a free and intelligent waiver of his constitutional rights before a guilty plea is accepted.' " *Stacey,* 349 N.W.2d at 442 (*quoting Sutton,* 317 N.W.2d at 416). We concluded, "[i]n this case, the circuit court judge, having conducted the combined arraignment and preliminary hearing as well as a day of jury trial on the case, was able to make this determination." *Stacey,* 349 N.W.2d at 442.

Finally, in *Application of Garritsen,* 376 N.W.2d 575, 576 (S.D.1985), the defendant was arraigned and fully advised of his rights in, "Municipal Court." The defendant was later rearraigned but not fully readvised of his rights in circuit court where he pled guilty. Subsequently invalidating the plea, we observed:

> we have upheld guilty pleas where the *same judge* [emphasis original] informed and canvassed the defendant once, and then later accepted a guilty plea without readvising the defendant, where the time lapse was five hours, where the time lapse was 26 days, and where the time lapse was 30 days. This Court has not, however, condoned a plea of guilty *where a different judge* [emphasis added] previously advised the defendant and the defendant then pleads guilty before a second judge, without complete readvisement. Here, we have a different judge and the second arraignment was 57 days later.

*Garritsen,* 376 N.W.2d at 578 (citations omitted). It is also notable that this court reached the above conclusion despite the fact the transcripts from the defendant's municipal court arraignment were in the court file during his circuit court arraignment. Irrespective of that fact, the apparent conclusion was that the plea taking judge could not determine *from his own record* that the accused intelligently waived his constitutional rights before pleading guilty.

Applying the above authorities in the instant case, particularly *Garritsen,* we conclude Quist's guilty pleas are invalid. Judge Dobberpuhl, the plea taking judge, merely confirmed Quist had been previously arraigned. However, he failed to confirm Quist was advised of his *Boykin* rights during the first arraignment and also failed to personally canvass Quist on those rights prior to accepting his guilty pleas. Thus, Judge Dobberpuhl had no basis *from his own record* on which to find the guilty pleas were being intelligently entered.

The fact the record at the time Quist entered his guilty pleas contained the transcript of his earlier arraignment before Judge Berndt does not render the pleas valid for two reasons. First, the presence in the record of the transcript of the earlier arraignment in *Garritsen* did not save the validity of the subsequent guilty plea entered in that case. Second, allowing Judge Dobberpuhl to determine the intelligence of Quist's pleas based on testimony considered by Judge Berndt (*i.e.* Judge Berndt's canvassing of Quist's rights) would allow one circuit judge to enter a finding based upon testimony heard by another circuit judge. This court condemned a similar practice in *Hinman v. Hinman,* 443 N.W.2d 660 (S.D.1989) where the judge who tried a divorce case was hospitalized prior to signing findings of fact and conclusions of law. The presiding circuit judge subsequently reviewed the transcript and signed findings and conclusions. This court held, "[a] successor judge has no authority to render a decision in a case where he has not heard the testimony, unless the parties so stipulate." *Id.* at 661.

Although *Hinman* is distinguishable in numerous respects from the present case, Judge Dobberpuhl was no less responsible for making a decision in accepting Quist's

guilty pleas, *i.e.*, whether the pleas were being intelligently entered. Judge Dobberpuhl had no testimony before him on which to base a decision or finding on the intelligence of the pleas. As a successor judge in the case, he could not look to testimony considered by Judge Berndt (*i.e.*, Judge Berndt's canvassing of the *Boykin* rights with Quist) to decide or enter a finding on the intelligence issue. *Hinman, supra; Garritsen, supra.* Thus, his implicit finding of intelligence in accepting Quist's pleas is unsupported by the record and the pleas are thereby rendered void under *Nachtigall, supra.*

Quist has raised several additional issues in this appeal which we deem unnecessary to address given our resolution of his first issue. The denial of habeas corpus relief is reversed and the matter is remanded for a new arraignment. *See, Garritsen, supra; Sutton, supra.*

Reversed and remanded.

MILLER, C.J., and WUEST, and HENDERSON, SABERS and AMUNDSON, JJ., participating.