#25934-rev & rem-SLZ

**2012 S.D. 15**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

GARRY ALAN ROSEN,                    Petitioner and Appellant,

v.

DOUGLAS WEBER, WARDEN OF
THE SOUTH DAKOTA STATE
PENITENTIARY,                    Respondent and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE  SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE WILLIAM J. SRSTKA, JR.
Judge

* * * *

CYNTHIA A. HOWARD of
Minnehaha County Office of
 the Public Advocate
Sioux Falls, South Dakota                    Attorneys for petitioner
                    and appellant.


MARTY J. JACKLEY
Attorney General

KIRSTEN E. JASPER
Assistant Attorney General
Pierre, South Dakota                    Attorneys for respondent
                    and appellee.

* * * *

                    CONSIDERED ON BRIEFS
                    ON NOVEMBER 14, 2011
                    REASSIGNED JANUARY 03, 2012

                    OPINION FILED **02/15/12**

#25934

ZINTER, Justice (on reassignment).

[¶1.]	Garry Rosen pleaded guilty to kidnapping.  He later contended that his plea was involuntary, and he petitioned for habeas corpus relief.  The habeas court concluded that Rosen's plea was voluntary.  We reverse because Rosen was never advised that by pleading guilty he would waive his right to trial by a jury, he would waive his right to compulsory process, and he would waive his right against self-incrimination.  Additionally, Rosen was never asked whether he understood he would be waiving those rights.

*Facts and Procedural History*

[¶2.]	Rosen was arraigned in November 2003 on three counts of kidnapping. He was advised of his constitutional rights.  However, he was not advised that if he pleaded guilty, he would waive his *Boykin* rights: the right to trial by a jury, the right to compulsory process, and the right against self-incrimination.  Rosen pleaded not guilty.

[¶3.]	Rosen later entered into a plea agreement.  In February 2004, a change of plea hearing was held before the sentencing court.  Rosen was again advised of his constitutional rights.  However, with respect to the waiver of his *Boykin* rights, Rosen was only advised (and stated he understood) that a guilty plea would waive his right to "a trial."  He was not advised or asked whether he understood that by pleading guilty he would waive his right to trial by a jury, his

-1-

right to compulsory process, and his right against self-incrimination.[1]  At that hearing, Rosen pleaded guilty to one count of kidnapping.

[¶4.]    A month later, Rosen filed a motion to withdraw his plea, alleging that he did not fully understand certain rights.  Rosen indicated that he did not understand the State's burden of proving the charges against him, the meaning of reasonable doubt, and his right against self-incrimination.  The court further

---

1.    The following is the entire colloquy regarding Rosen's advisement of rights and the court's canvassing regarding the waiver of his *Boykin* rights.

> THE COURT: Mr. Rosen, I am going to go through rights that apply to you in these proceedings.  First, you have the right to be represented by an attorney.  You are presumed to be innocent until proven guilty.  The state carries the burden of proving you guilty.  They must do that beyond a reasonable doubt.  You have the right to a trial to the court or trial by jury.  If you have a trial to a jury, the verdict of the jury must be unanimous.
>
> You have a right to remain silent, meaning the state can't force you to testify and use that to prove the charges against you.  You have a right to ask questions of witnesses who appear, to call any witnesses you wish to appear.  And you have a right to have subpoenas issued to compel the appearance of witnesses who would not voluntarily appear.  Do you understand those rights?
>
> ROSEN: Yes, I do.
>
> THE COURT: The pleas available to you if you wish to have a trial – you may enter a plea of not guilty or not guilty by reason of insanity.  If you wish to avoid a trial, you may enter a plea of guilty or guilty but mentally ill or under certain instances you may enter a plea of no contest.  If you plead guilty or no contest, you would waive your rights to a trial and all that remains is to enter sentence.
>
> Do you understand that?
>
> ROSEN: Yes, I do.

explained those and Rosen's other constitutional rights. The explanation did not, however, include an advisement of or inquiry whether Rosen understood that a plea of guilty would waive his *Boykin* rights. At the conclusion of the hearing, Rosen indicated that he then understood the rights he previously misunderstood, and he withdrew his motion to withdraw his plea.

[¶5.]     Rosen was sentenced two days later. Although there was no further advisement of rights at the sentencing hearing, the court gave Rosen an opportunity to withdraw his plea. Rosen indicated he wanted to proceed with sentencing. He was sentenced and did not file a direct appeal.

[¶6.]     In August 2010, Rosen petitioned for a writ of habeas corpus. He contended that his plea was involuntary because the sentencing court failed to advise him that he would waive his *Boykin* rights by pleading guilty. Rosen also contended that the plea was involuntary because the sentencing court failed to determine whether Rosen understood he was waiving those rights. The habeas court denied relief but granted Rosen's motion for a certificate of probable cause.

*Decision*

[¶7.]     The question on appeal is whether Rosen's plea was constitutionally invalid because the sentencing court failed to advise, and then determine whether Rosen understood, that he was waiving his *Boykin* rights by pleading guilty. The facts concerning the sentencing court's advisement of rights and the *Boykin* canvassing are not in dispute. We review the habeas court's conclusions of law de novo. *Monette v. Weber,* 2009 S.D. 77, ¶ 6, 771 N.W.2d 920, 923.

[¶8.] A criminal defendant entering a guilty plea waives three fundamental constitutional rights: the right against compulsory self-incrimination, the right to confront one's accusers, and the right to a trial by a jury. *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 1712, 23 L. Ed. 2d 274 (1969). Therefore, "it is critical not only that a defendant be advised of his rights relating to self-incrimination, trial by jury, and confrontation, but also that the defendant intentionally relinquish or abandon known rights." *Monette*, 2009 S.D. 77, ¶ 10, 771 N.W.2d at 924 (citing *Boykin*, 395 U.S. at 243 n.5, 89 S. Ct. at 1712 n.5). Further, the "record must *affirmatively show* . . . that the defendant *explicitly waived*" those constitutional rights. *Id.* (second emphasis added); *State v. Goodwin*, 2004 S.D. 75, ¶ 23, 681 N.W.2d 847, 855 (requiring affirmative showing of explicit waiver). "We cannot presume a waiver of these three important federal rights from a silent record." *Monette*, 2009 S.D. 77, ¶ 10, 771 N.W.2d at 925.

[¶9.] In this case, no court ever conducted the required *Boykin* canvassing. Therefore, Rosen was never advised, and he was never asked whether he understood, that by pleading guilty he was waiving his right to a trial by a jury, his right against self-incrimination, and his right to confrontation. Indeed, the habeas court recognized that Rosen was not canvassed regarding all three *Boykin* rights. The habeas court only found that "Rosen was advised . . . that if he pled guilty, he would waive his right to a trial . . . ."[2] Therefore, as we said in *Monette,* by

---

2. Although Rosen was advised he would "waive [his] rights to a trial," he was not advised he would waive his right to a trial by a *jury*. *Boykin* specifically requires advisement of "the right to trial by jury." 395 U.S. at 243, 89 S. Ct. at 1712.

accepting the change of plea without a *Boykin* canvassing, "[t]he sentencing court failed to make critical inquiries and determinations when the inquiries were most significant – when [the defendant] changed his not guilty plea to a plea of [guilty]." 2009 S.D. 77, ¶ 13, 771 N.W.2d at 925-26. And, despite being fully advised of his constitutional rights, the lack of a *Boykin* canvassing renders the plea unconstitutional.

> The issue . . . is not whether [the defendant's] plea was knowing. [The defendant] had been fully advised of his constitutional rights. . . . Instead, the issue is whether a record, noticeably silent . . . and thus no record of an effective waiver of federal constitutional rights, renders the plea unconstitutional. *Boykin* holds it does.

*Id.* ¶ 14.

[¶10.]    The failure to canvass Rosen regarding a waiver of his *Boykin* rights invalidates his guilty plea even under our less intense standard of review in habeas corpus cases. In *Monette*, we stated that when there is no record showing that the sentencing court conducted a *Boykin* canvassing, the habeas court has no basis upon which it may find that the sentencing court obtained a voluntary and valid waiver of the defendant's *Boykin* rights. "[A] habeas court [has] no basis on a silent record from the sentencing court to determine by a preponderance of the evidence that the plea was voluntary and was a waiver of constitutional rights when it was entered." *Id.* ¶ 16. It is only when the sentencing court "canvass[es] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence" that the sentencing court "leaves a record adequate for any review." *Boykin*, 395 U.S. at 244, 89 S. Ct. at 1712.

[¶11.] The habeas court concluded that the plea was voluntary considering the totality of the circumstances. The State and the dissent adopt this argument on appeal. The State contends that we should examine factors such as Rosen's age, prior criminal record, whether he was represented by counsel, the existence of a plea agreement, and the time between the advisement of rights and the time of entering the plea. Under *Monette*, however, the totality of the circumstances analysis is inapplicable when the record reflects that no canvassing regarding a *Boykin* waiver ever took place. In the absence of a *Boykin* canvassing, a "critical step" is missing and the reviewing court does "not consider the additional factors under the totality of the circumstances analysis." *Monette*, 2009 S.D. 77, ¶ 16, 771 N.W.2d at 926-27.

[¶12.] The dissent claims that the "record is not silent on this issue, as Rosen did waive his rights, including his *Boykin* rights." *See infra* dissent ¶ 23. The record demonstrates that this claim is incorrect. The change of plea colloquy clearly shows that the sentencing court's *Boykin* waiver advisement and inquiry was limited to the right to "a trial." *See supra* note 1. The dissent agrees. *See infra* dissent ¶ 21 (quoting the sentencing court's waiver advisement, which only mentions the waiver of the right to "a trial"). Thus, the record is silent regarding a waiver of all three *Boykin* rights. Those rights were never discussed. *See supra* note 1.

[¶13.] The dissent also claims that the sentencing court made "explicit findings" that Rosen "made a voluntary waiver" and "[t]here is nothing indicating that the [sentencing] court's findings of fact are clearly erroneous." *See infra*

dissent ¶ 23. The dissent's cited finding, however, does not even mention a waiver of Rosen's *Boykin* rights. *See id.* That is because a waiver of Rosen's *Boykin* rights was never mentioned in any of Rosen's appearances before the arraigning and sentencing courts. Because there was never any *Boykin* waiver advisement or canvassing, it is difficult to understand how the dissent can conclude that Rosen "made a voluntary and explicit waiver" of his *Boykin* rights. *See id.* Ultimately, one must ask how a pleading defendant could have knowingly and voluntarily waived his or her *Boykin* rights when that defendant was never advised that those rights would be waived by pleading guilty. And, unless there is a written *Boykin* waiver (which is not present in this case), how can the record explicitly show an affirmative waiver unless the court canvasses the defendant about the matter? *Boykin's* requirements are not satisfied when the subject is never discussed.

[¶14.] Although the arraigning and the sentencing courts fully advised Rosen of his basic constitutional rights, those advisements were not sufficient to satisfy the waiver requirements of *Boykin*. In considering this issue in *Monette*, we acknowledged that prior to the change of plea, that judge had "fully advised [the defendant] of his constitutional rights." 2009 S.D. 77, ¶ 7, 771 N.W.2d at 923. Nevertheless, we found the plea involuntary because "the sentencing court failed to inquire if Monette waived his constitutional rights." *Id.* ¶ 9. In this case, Rosen was never advised that if he pleaded guilty he would waive his right against self-incrimination, his right of confrontation, and his right to a trial by a jury. Further, the sentencing court never inquired whether Rosen understood that he would waive those rights by pleading guilty. Therefore, *Boykin* requires the relief granted in

*Monette,* 2009 S.D. 77, ¶ 17, 771 N.W.2d at 927. This case is reversed and remanded to the habeas court with direction to void the plea and remand to the sentencing court for further proceedings in accordance with this decision and SDCL ch. 21-27.[3]

[¶15.]        KONENKAMP and WILBUR, Justices, concur.

[¶16.]        GILBERTSON, Chief Justice, and FOLEY, Circuit Court Judge, dissent.

[¶17.]        FOLEY, Circuit Court Judge, sitting for SEVERSON, Justice, disqualified.

GILBERTSON, Chief Justice (dissenting).

[¶18.]        I respectfully dissent. I would affirm because a review of the record under the limited standard of review does not support Rosen's petition for habeas relief.

[¶19.]        We have a well-established standard of review for habeas decisions:

> Our review of habeas corpus proceedings is limited because it is a collateral attack on a final judgment. The review is limited to jurisdictional errors. In criminal cases, a violation of the defendant's constitutional rights constitutes a jurisdictional error. The petitioner has the burden of proving he is entitled to relief by a preponderance of the evidence.
>
> The findings of facts shall not be disturbed unless they are clearly erroneous. . . . The habeas court's conclusions of law are reviewed de novo.

---

3.    Rosen also argues that the sentencing court accepted his plea without an adequate factual basis. We do not address this argument because the plea is invalid under *Boykin* and *Monette.* The sentencing court should consider the factual basis issue on remand.

*Monette v. Weber*, 2009 S.D. 77, ¶ 6, 771 N.W.2d 920, 923 (quoting *Owens v. Russell*, 2007 S.D. 3, ¶ 6, 726 N.W.2d 610, 614-15).

[¶20.] This Court has held that the "record must affirmatively show the plea was voluntary, that the defendant understood the consequences of pleading guilty, and that the defendant explicitly waived the constitutional right against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers." *Id.* ¶ 10, 771 N.W.2d at 925 (emphasis omitted). However, this requirement does not necessitate the "recitation of a formula by rote or the spelling out of every detail by the trial court." *Id.* ¶ 11 (quoting *Nachtigall v. Erickson*, 85 S.D. 122, 128, 178 N.W.2d 198, 201 (1970)). The circuit court "must be able to determine from its own record that the accused has made a free and intelligent waiver of his constitutional rights before the guilty plea was accepted." *Id.* (citing *State v. Apple*, 2008 S.D. 120, ¶ 10, 759 N.W.2d 283, 287).

[¶21.] At the plea hearing, the court read Rosen his rights in full. *See* Majority Opinion ¶ 3 n.1. The circuit court told Rosen: "I am going to go through rights that apply to you in these proceedings. . . . You have the right to a trial to the court or trial by jury. . . . You have a right to remain silent, meaning the state can't force you to testify and use that to prove the charges against you. You have a right to ask questions of witnesses . . . to call any witnesses you wish . . . . Do you understand these rights?" Rosen responded, "Yes, I do." The circuit court immediately warned Rosen: "If you plead guilty or no contest, you would waive your rights to a trial and all that remains is to enter sentence. Do you understand that?" Rosen answered, "Yes, I do." The court found that Rosen was entering his plea

voluntarily. The court further found that Rosen had been advised of his constitutional rights and that he understood them.

[¶22.] The circuit court did not recite a rote formula or spell out every detail of Rosen's rights yet again in the proceeding. However, under *Monette*, that is not required. *Monette*, 2009 S.D. 77, ¶ 11, 771 N.W.2d at 925 (emphasizing that *Boykin* "does not require the recitation of a formula by rote or the spelling out of every detail by the trial court" (quoting *Nachtigall*, 85 S.D. at 128, 178 N.W.2d at 201)). We take this as an indication that form will not be exalted over substance. This is consistent with the Supreme Court's intent in *Boykin* that a plea be knowing and voluntary, and to the satisfaction of the court that it was a free and voluntary waiver. *See Parke v. Raley*, 506 U.S. 20, 29, 113 S. Ct. 517, 523, 121 L. Ed. 2d 391 (1992).

[¶23.] We cannot overlook the explicit findings of the circuit court, which had the benefit of observing and conversing with Rosen live. The court found Rosen knew and understood his rights and made a voluntary waiver. Specifically, the court said:

> The court will find that Gary Rosen has been regularly held to answer the charges against him. He's represented by competent counsel. He's been advised of the charges against him, his Constitutional and statutory rights, the pleas available to him, and the maximum penalty. And I find he understands them. I will further find he's acting of his own free will and is competent to enter a plea.

The record is not silent on this issue, as Rosen did waive his rights, including his *Boykin* rights. Therefore, "the record *in some manner* [shows] the defendant entered his plea understandingly and voluntarily." *Monette*, 2009 S.D. 77, ¶11, 771

N.W.2d at 925 (quoting *Quist v. Leapley*, 486 N.W.2d 265, 267 (S.D. 1992)). When the record indicates that a defendant has voluntarily and explicitly waived his rights, *Boykin* is satisfied. There is nothing indicating that the circuit court's findings of fact are clearly erroneous. When the record is examined as a whole, the totality of circumstances indicates that Rosen made a voluntary and explicit waiver of all his constitutional rights.

[¶24.]     Based upon the colloquy at the plea hearing, Rosen knew his rights and voluntarily chose to plead guilty. However, even if there was error, it was cured by what occurred at the change of plea hearing. Rosen stated that he understood his rights to the best of his ability. The court began to go through Rosen's rights with him to determine which he did not understand. Rosen indicated that he thought the State had already proven the charges against him. He explained that after his plea, the concept of the State having the burden of proof was explained to him further and he now understood it. Rosen was asked by his own counsel, "Do you feel like you understand those rights now?" He responded "yes." The hearing primarily consisted of discussion on what Rosen's claim was as a basis for withdrawing his guilty plea. Rosen testified that he felt rushed to accept the plea and that some of the evidence was irrelevant.[4] At the conclusion of the hearing, Rosen withdrew his motion to withdraw his plea.

---

4.     In *Monette*, the petitioner testified at the habeas trial that his plea before the sentencing court was coerced. *Monette*, 2009 S.D. 77, ¶ 16, 771 N.W.2d at 926. The habeas court then concluded that the plea was voluntary. *Id.* In this case, Rosen testified at the habeas hearing that he pleaded guilty because he did not want to receive life in prison. There is no claim that he was coerced and nothing in the record indicates any coercion.

[¶25.] From a full reading of the change of plea hearing transcript, it is apparent that very little time was spent on Rosen's misapprehension of his rights. At the hearing, he testified that he understood his rights. When he was then given the opportunity to withdraw his plea, he chose instead to withdraw his motion to withdraw his plea. The court deferred ruling on Rosen's motion until the sentencing hearing two days later in order to give Rosen time to consider his options. Rosen still chose to plead guilty when questioned at the sentencing hearing.

[¶26.] "The petitioner in a habeas action carries the burden of proving an involuntary plea and that his constitutional rights were violated." *Monette*, 2009 S.D. 77, ¶ 16, 771 N.W.2d at 926.[5] The habeas court heard testimony from Rosen. The habeas court concluded that Rosen's guilty plea was voluntary and intelligent. The court also found that Rosen was advised of his rights numerous times and that he knew the consequences of pleading guilty.

[¶27.] We have a confined standard of review on this issue. "Upon a *direct appeal* from a conviction the defendant must be given all presumptions and protections possible under our constitution. However, when the proceeding before the court is in the nature of a collateral attack, as in a habeas corpus action . . . it becomes subject to less intense scrutiny upon review." *State v. Moeller*, 511 N.W.2d 803, 809 (S.D. 1994); *see also State v. Jensen*, 2011 S.D. 32, ¶ 8, 800 N.W.2d 359,

---

5. At no point during any of the proceedings did Rosen's counsel object to or comment on the advisement of the rights. Moreover, Rosen has made no allegation that counsel was incompetent. Rosen also chose not to exercise his right to file a direct appeal.

363.  Moreover, "this Court, acting in our appellate function on the cold and indeed ancient record before us, cannot presume greater insight into the defendant's 'understanding of his rights . . . and his plea of guilty than that of the other courts that have considered this case.'" *Moeller*, 511 N.W.2d at 808 (quoting *Boyd v. Dutton*, 405 U.S. 1, 4, 92 S. Ct. 759, 761, 30 L. Ed. 2d 755 (1972)).  Given the standard of review and the record, I would affirm.

[¶28.]        FOLEY, Circuit Court Judge, joins this dissent.