GILBERTSON, Chief Justice
(dissenting).
[¶ 18.] I respectfully dissent. I would affirm because a review of the record under the limited standard of review does not support Rosen’s petition for habeas relief.
[¶ 19.] We have a well-established standard of review for habeas decisions:
*768 Our review of habeas corpus proceedings is limited because it is a collateral attack on a final judgment. The review is limited to jurisdictional errors. In criminal cases, a violation of the defendant’s constitutional rights constitutes a jurisdictional error. The petitioner has the burden of proving he is entitled to relief by a preponderance of the evidence.
The findings of facts shall not be disturbed unless they are clearly erroneous .... The habeas court’s conclusions of law are reviewed de novo.
Monette v. Weber, 2009 S.D. 77, ¶ 6, 771 N.W.2d 920, 923 (quoting Owens v. Russell, 2007 S.D. 3, ¶ 6, 726 N.W.2d 610, 614-15).
[¶ 20.] This Court has held that the “record must affirmatively show the plea was voluntary, that the defendant understood the consequences of pleading guilty, and that the defendant explicitly waived the constitutional right against compulsory self-incrimination, the right to trial by jury, and the right to confront one’s accusers.” Id. ¶ 10, 771 N.W.2d at 925 (emphasis omitted). However, this requirement does not necessitate the “recitation of a formula by rote or the spelling out of every detail by the trial court.” Id. ¶ 11 (quoting Nachtigall v. Erickson, 85 S.D. 122, 128, 178 N.W.2d 198, 201 (1970)). The circuit court “must be able to determine from its own record that the accused has made a free and intelligent waiver of his constitutional rights before the guilty plea was accepted.” Id. (citing State v. Apple, 2008 S.D. 120, ¶ 10, 759 N.W.2d 283, 287).
[¶ 21.] At the plea hearing, the court read Rosen his rights in full. See Majority Opinion ¶ 3 n. 1. The circuit court told Rosen: “I am going to go through rights that apply to you in these proceedings.... You have the right to a trial to the court or trial by jury_You have a right to remain silent, meaning the state can’t force you to testify and use that to prove the charges against you. You have a right to ask questions of witnesses ... to call any witnesses you wish.... Do you understand these rights?” Rosen responded, “Yes, I do.” The circuit court immediately warned Rosen: “If you plead guilty or no contest, you would waive your rights to a trial and all that remains is to enter sentence. Do you understand that?” Rosen answered, ‘Yes, I do.” The court found that Rosen was entering his plea voluntarily. The court further found that Rosen had been advised of his constitutional rights and that he understood them.
[¶ 22.] The circuit court did not recite a rote formula or spell out every detail of Rosen’s rights yet again in the proceeding. However, under Monette, that is not required. Monette, 2009 S.D. 77, ¶ 11, 771 N.W.2d at 925 (emphasizing that Boykin “does not require the recitation of a formula by rote or the spelling out of every detail by the trial court” (quoting Nachtigall, 85 S.D. at 128, 178 N.W.2d at 201)). We take this as an indication that form will not be exalted over substance. This is consistent with the Supreme Court’s intent in Boykin that a plea be knowing and voluntary, and to the satisfaction of the court that it was a free and voluntary waiver. See Parke v. Raley, 506 U.S. 20, 29, 113 S.Ct. 517, 523, 121 L.Ed.2d 391 (1992).
[¶ 23.] We cannot overlook the explicit findings of the circuit court, which had the benefit of observing and conversing with Rosen live. The court found Rosen knew and understood his rights and made a voluntary waiver. Specifically, the court said:
The court will find that Gary Rosen has been regularly held to answer the charges against him. He’s represented by competent counsel. He’s been ad *769 vised of the charges against him, his Constitutional and statutory rights, the pleas available to him, and the maximum penalty. And I find he understands them. I will further find he’s acting of his own free will and is competent to enter a plea.
The record is not silent on this issue, as Rosen did waive his rights, including his Boykin rights. Therefore, “the record in some manner [shows] the defendant entered his plea understandingly and voluntarily.” Monette, 2009 S.D. 77, ¶ 11, 771 N.W.2d at 925 (quoting Quist v. Leapley, 486 N.W.2d 265, 267 (S.D.1992)). When the record indicates that a defendant has voluntarily and explicitly waived his rights, Boykin is satisfied. There is nothing indicating that the circuit court’s findings of fact are clearly erroneous. When the record is examined as a whole, the totality of circumstances indicates that Rosen made a voluntary and explicit waiver of all his constitutional rights.
[¶ 24.] Based upon the colloquy at the plea hearing, Rosen knew his rights and voluntarily chose to plead guilty. However, even if there was error, it was cured by what occurred at the change of plea hearing. Rosen stated that he understood his rights to the best of his ability. The court began to go through Rosen’s rights with him to determine which he did not understand. Rosen indicated that he thought the State had already proven the charges against him. He explained that after his plea, the concept of the State having the burden of proof was explained to him further and he now understood it. Rosen was asked by his own counsel, “Do you feel like you understand those rights now?” He responded “yes.” The hearing primarily consisted of discussion on what Rosen’s claim was as a basis for withdrawing his guilty plea. Rosen testified that he felt rushed to accept the plea and that some of the evidence was irrelevant.[4] At the conclusion of the hearing, Rosen withdrew his motion to withdraw his plea.
[¶ 25.] From a full reading of the change of plea hearing transcript, it is apparent that very little time was spent on Rosen’s misapprehension of his rights. At the hearing, he testified that he understood his rights. When he was then given the opportunity to withdraw his plea, he chose instead to withdraw his motion to withdraw his plea. The court deferred ruling on Rosen’s motion until the sentencing hearing two days later in order to give Rosen time to consider his options. Rosen still chose to plead guilty when questioned at the sentencing hearing.
[¶ 26.] “The petitioner in a habeas action carries the burden of proving an involuntary plea and that his constitutional rights were violated.” Monette, 2009 S.D. 77, ¶ 16, 771 N.W.2d at 926.[5] The habeas court heard testimony from Rosen. The habeas court concluded that Rosen’s guilty plea was voluntary and intelligent. The court also found that Rosen was advised of his rights numerous times and that he knew the consequences of pleading guilty.
[¶ 27.] We have a confined standard of review on this issue. “Upon a direct ap *770 peal from a conviction the defendant must be given all presumptions and protections possible under our constitution. However, when the proceeding before the court is in the nature of a collateral attack, as in a habeas corpus action ... it becomes subject to less intense scrutiny upon review.” State v. Moeller, 511 N.W.2d 803, 809 (S.D.1994); see also State v. Jensen, 2011 S.D. 32, ¶ 8, 800 N.W.2d 359, 363. Moreover, “this Court, acting in our appellate function on the cold and indeed ancient record before us, cannot presume greater insight into the defendant’s ‘understanding of his rights ... and his plea of guilty than that of the other courts that have considered this case.’ ” Moeller, 511 N.W.2d at 808 (quoting Boyd v. Dutton, 405 U.S. 1, 4, 92 S.Ct. 759, 761, 30 L.Ed.2d 755 (1972)). Given the standard of review and the record, I would affirm.
[¶ 28.] FOLEY, Circuit Court Judge, joins this dissent.

. In Monette, the petitioner testified at the habeas trial that his plea before the sentencing court was coerced. Monette, 2009 S.D. 77, ¶ 16, 771 N.W.2d at 926. The habeas court then concluded that the plea was voluntary. Id. In this case, Rosen testified at the habeas hearing that he pleaded guilty because he did not want to receive life in prison. There is no claim that he was coerced and nothing in the record indicates any coercion.

. At no point during any of the proceedings did Rosen's counsel object to or comment on the advisement of the rights. Moreover, Ro-sen has made no allegation that counsel was incompetent. Rosen also chose not to exercise his right to file a direct appeal.